**FILED**

U.S. DISTRICT COURT
INDIANAPOLIS DIVISION

16 OCT -4  PM 5: 13

SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **1:16**-cr-**0212** JMS -TAB |
| | ) CAUSE NO. 1:16-cr |
| JAMES BURKHART, | ) -01 |
| DANIEL BENSON, | ) -02 |
| STEVEN GANOTE, and | ) -03 |
| JOSHUA BURKHART, | ) -04 |
| a/k/a "Justin Barnes," | ) |
| | ) |
| Defendants. | ) |

## INDICTMENT

The Grand Jury charges that:

### General Allegations

At times relevant to this Indictment:

1.     **JAMES BURKHART** conspired with **DANIEL BENSON, STEVEN GANOTE, JOSHUA BURKHART**, and others known and unknown to the Grand Jury, to overcharge and defraud American Senior Communities LLC, the Health & Hospital Corporation of Marion County, and federal healthcare programs as part of a scheme to solicit, receive, and conceal kickbacks and other payments for their personal benefit.

2.     **American Senior Communities LLC ("ASC")** was a privately held company based in Indianapolis, Indiana, that managed approximately 70 nursing home and senior care facilities throughout Indiana.   As manager, ASC was responsible for the facilities' daily operations and patient care.

3.      **The Health and Hospital Corporation of Marion County ("Health & Hospital")** was a municipal corporation that administered and operated public health programs, public hospitals, and nursing homes and senior care facilities in and around Indiana.   Health & Hospital contracted with ASC to manage its approximately 70 nursing homes.   As part of the contract, ASC used Health & Hospital funds to manage the facilities, including paying outside suppliers of products and services ("third-party vendors") for the facilities' operations.   Health & Hospital delegated authority to ASC to write checks and make payments drawn directly on Health & Hospital's bank accounts.

4.      **Federal health care programs**, namely **Medicare** and **Indiana Medicaid**, provided the vast majority of the funds to Health & Hospital, which ASC used to pay staff, vendors, and other expenses associated with managing the facilities.   The federal health care program funds were deposited into Health & Hospital's bank accounts.   The amount of Indiana Medicaid funds supplied to Health & Hospital for these purposes were based on multiple factors, including costs associated with a facility's daily operations.   In addition, Medicare and Indiana Medicaid approved the provision of and paid claims for prescriptions, home health care, and hospice under certain circumstances.   Third-party vendors provided and billed for these services, for individuals who were referred from ASC-managed facilities.

5.      **JAMES BURKHART**, a resident of Carmel, Indiana, was ASC's Chief Executive Officer.   As CEO, he was empowered to negotiate and execute contracts on behalf of ASC and sign checks and make payments drawn on ASC's and Health & Hospital's bank accounts.   He was not, however, an owner of ASC.   ASC paid him a salary and other compensation.   For example, in 2014, ASC paid him over $1.5 million in compensation.

2

6.    **DANIEL BENSON**, a resident of Fishers, Indiana, was ASC's Chief Operating Officer.   As COO, he was empowered to negotiate and execute contracts on behalf of ASC and could cause ASC to write checks and make payments drawn on ASC's bank accounts and Health & Hospital's bank accounts.   He was not, however, an owner of ASC.   ASC paid him a salary and other compensation.   For example, in 2014, ASC paid him over $2.8 million in compensation.

7.    **STEVEN GANOTE**, a resident of North Salem, Indiana, was JAMES BURKHART's associate and personal friend.   He neither owned nor was an employee of ASC or Health & Hospital.

8.    **JOSHUA BURKHART a/k/a "Justin Barnes,"** a resident of Fishers, Indiana, was JAMES BURKHART's brother.   He neither owned nor was an employee of ASC.   He worked for an accounting firm that prepared ASC's and Health & Hospital's cost reports for federal health care programs.

9.    **Shell Companies:**   The Defendants used multiple shell companies to falsify and inflate costs to ASC and Health & Hospital for goods and services vendors provided, to steal discounts and rebates that belonged to ASC and Health & Hospital, and to conceal kickbacks and other payments from vendors and others to themselves.

a.    JAMES BURKHART owned and controlled, among other shell companies, MMAJ LLC, Truly LLC, and Driver Sandwedge LLC.

b.    BENSON owned and controlled There Is A Hope LLC and he caused the creation of the Dan Benson Family Charitable Trust.

c.    GANOTE owned and controlled, among other shell companies, Force Holding Company LLC, SRB, Inc., Mainsource Landscaping LLC, Indiana Uniform

3

Company LLC, Finite Capital LLC dba Healthcare by Design, Cardinal Distribution LLC, Med-Healthline Supply LLC, BTS Solutions LLC, BTS Ventures LLC, Detour Marketing & Consulting Services LLC, Guardian Management Solutions LLC, Jett LLC, Gemeni Properties LLC, Oregon Properties LLC, and Bright HVAC LLC.

      d.     JOSHUA BURKHART owned and controlled Circle Consulting LLC and Heartland Flag LLC.

10.     ASC employees JAMES BURKHART and BENSON were prohibited by ASC's "Conflicts of Interest" policy from, among other things, "own[ing] or hold[ing] any significant interest in a supplier, customer, or competitor" of ASC.

11.     The Defendants capitalized on the scale of ASC's management of approximately 70 nursing homes' daily operations, involving thousands of patients. Managing and operating all of these facilities, located throughout the state of Indiana, required the use of numerous vendors to provide many different services and products, including landscaping, food, paving, uniforms, interior decorations, scent products, American flags, medical supplies, pharmacy services, patient lifts, generators, patient therapies, and many others.

12.     The Defendants exploited ASC's numerous vendor relationships to divert, receive, and launder millions of dollars for their personal benefit, which the Defendants concealed from Health & Hospital, ASC's owners, and federal health care programs.

## COUNT 1
### Conspiracy to Commit Mail, Wire, and Health Care Fraud
### 18 U.S.C. § 1349

13.     Paragraphs 1 through 12 are incorporated by reference as though set forth fully herein.

14.     Beginning in or before January 2009 and continuing through September 15, 2015, within the Southern District of Indiana and elsewhere,

**JAMES BURKHART,**
**DANIEL BENSON,**
**STEVEN GANOTE, and**
**JOSHUA BURKHART,**
**a/k/a "Justin Barnes,"**

the Defendants herein, did knowingly and willfully combine, conspire, confederate and agree with each other and with others, known and unknown to the Grand Jury, to violate:

(a)     Title 18, United States Code, Section 1341 ("Mail Fraud"), that is, to knowingly and with intent to defraud devise, and intend to devise, any scheme and artifice to defraud, and to obtain money and property by means of false or fraudulent pretenses, representations, and promises, knowing that they were false and fraudulent when made, and knowingly cause to be delivered any matter or thing by mail or commercial interstate carrier, according to the directions thereon, for the purpose of executing the scheme, and for attempting so to do;

(b)     Title 18, United States Code, Section 1343 ("Wire Fraud"), that is, to knowingly and with intent to defraud devise, and intend to devise, any scheme and artifice to defraud, and to obtain money and property by means of false or fraudulent pretenses, representations, and promises, knowing that they were false and fraudulent when made, and transmit and cause to be transmitted certain wire communications in

5

interstate and foreign commerce, for the purpose of executing the scheme, and for attempting so to do; and

(c)     Title 18, United States Code, Section 1347 ("Health Care Fraud"), that is, to knowingly and willfully execute, or attempt to execute, any scheme and artifice to defraud any federal health care benefit program, and to obtain by means of false or fraudulent pretenses, representations, and promises money and property owned by or under the custody and control of any federal health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services.

## Purpose of the Conspiracy

15.     It was the purpose of the conspiracy for ASC executives JAMES BURKHART and BENSON, together with GANOTE, JOSHUA BURKHART, and others, to unlawfully enrich themselves at the expense of Health & Hospital, ASC's owners, and federal health care programs.

## Manner and Means of the Conspiracy

16.     In furtherance of the unlawful purpose of the conspiracy, the Defendants, and others known and unknown to the Grand Jury, falsified and inflated vendor invoices to ASC, pocketed discounts and rebates that belonged to ASC and Health & Hospital, and solicited and received kickbacks from those who did, or purported to do, business with ASC.

17.     JAMES BURKHART and BENSON abused their positions as ASC's CEO and COO to carry out the scheme.   All the Defendants created and used numerous shell companies to conceal their fraudulent scheme and funnel millions of dollars from Health & Hospital, ASC's owners, and federal health care programs to themselves.   The Defendants also made or caused to

6

be made numerous mailings and interstate wire communications, including but not limited to those described herein and in Counts 2–11.

18.     GANOTE documented much of the fraudulent scheme in binders, records, and handwritten notes and ledgers, detailing the amounts billed to and received from ASC and Health & Hospital and the kickbacks paid to JAMES BURKHART, BENSON, himself, and others.

19.     The Defendants' fraudulent scheme exploited the need for numerous products and services in the 70 nursing homes ASC managed, including but not limited to the following:

### *Landscaping and Outdoor Maintenance*

20.     Between at least January 1, 2009 and September 15, 2015, JAMES BURKHART and the owner of Mainscape, Inc., a landscaping and outdoor maintenance company, falsified and inflated invoices from Mainscape to ASC to (1) pay kickbacks to JOSHUA BURKHART; (2) pay kickbacks to themselves, and (3) pay for JAMES BURKHART's personal travel and political contributions.

21.     Between approximately January 1, 2009 and December 2014, Mainscape, at JAMES BURKHART'S direction, inflated invoices by 5% and sent them to ASC for payment. ASC used Health & Hospital funds to pay Mainscape the inflated amount.    In turn, Mainscape paid the 5% overcharge to JOSHUA BURKHART, through JOSHUA BURKHART's shell company, Circle Consulting LLC.    JOSHUA BURKHART received approximately $400,000 in concealed overcharges.

22.     Between approximately January 2015 and September 15, 2015, JAMES BURKHART and Mainscape increased the amount by which the invoices were fraudulently inflated by an additional 45%.    They also began paying the overcharges to themselves instead of to JOSHUA BURKHART.    After ASC paid the inflated invoice using Health & Hospital

7

funds, Mainscape paid the overcharge to JAMES BURKHART's shell company, Driver Sandwedge LLC. JAMES BURKHART then paid half of the overcharge to the Mainscape owner's shell company, Maz LLC, and pocketed the rest. JAMES BURKHART and the Mainscape owner each received approximately $195,000 in concealed overcharges.

23.     Beginning in or before 2009 and continuing until approximately April 22, 2015, Mainscape, at JAMES BURKHART's direction, submitted false invoices from Mainscape to ASC that purported to be for "consulting" services. ASC paid the invoices. In reality, neither the owner nor Mainscape provided any consulting services to ASC. Instead, the payments were actually reimbursements to the Mainscape owner for JAMES BURKHART's personal use of a private plane that Mainscape's owner owned, for a golf trip that the Mainscape owner planned and paid for at JAMES BURKHART's request, and for political contributions that JAMES BURKHART directed the owner to pay. In total, approximately $1.5 million in Health & Hospital funds were paid to Mainscape for fictitious "consulting" services.

### *Flags*

24.     Between approximately January 1, 2009 and September 15, 2015, JAMES BURKHART and JOSHUA BURKHART inflated invoices from Heartland Flag LLC, a shell company JOSHUA BURKHART created to conceal overcharges to ASC and Health & Hospital for American flags, State of Indiana flags, and ASC-branded flags for the purpose of enriching JOSHUA BURKHART.

25.     JOSHUA BURKHART purchased flags from a local flag supplier and sent them to ASC facilities. He submitted to ASC invoices from Heartland Flag LLC for the same flags. The price that Heartland Flag LLC charged ASC was approximately 150% higher than the price

JOSHUA BURKHART paid for the flags.   JAMES BURKHART personally approved the invoices and caused ASC to pay Heartland Flag LLC for new flags multiple times per year.

26.   JOSHUA BURKHART used the name "Justin Barnes" and the email address "justin.barnes@heartlandflag.com" to further conceal his identity when communicating with ASC employees about flag orders.

27.   As a result of this scheme, JOSHUA BURKHART received over $325,000.   He paid a portion of these funds to BENSON in cash.

### Uniforms, Door Wraps, Luggage Carts, and T-Shirts

28.   Between approximately August 12, 2013 and September 15, 2015, JAMES BURKHART, BENSON, and GANOTE used Indiana Uniform Company LLC, a shell company GANOTE created, to conceal overcharges to ASC and Health & Hospital for a variety of products for the purpose of enriching themselves.   These products included ASC-branded discharge packages, embroidered uniforms, seasonal door wraps, luggage carts, and t-shirts for an Alzheimer's Memory Walk.

29.   GANOTE used Indiana Uniform Company LLC to purchase the products from suppliers and send them to ASC facilities.   GANOTE submitted to ASC invoices from Indiana Uniform Company LLC for the same products.   The price that Indiana Uniform Company LLC charged ASC was as much as 200% higher than the price that Indiana Uniform Company LLC paid for the items.   ASC paid these invoices from both its and Health & Hospital's funds. GANOTE then paid a portion of the overcharge to JAMES BURKHART through his shell company, MMAJ LLC, and to BENSON, through his shell company, There Is A Hope LLC.

30.   As a result of this scheme, JAMES BURKHART, BENSON, and GANOTE received a total of over $1.5 million.

9

### *Furniture*

31.      Between approximately December 30, 2014 and June 4, 2015, JAMES

BURKHART, BENSON, and GANOTE attempted to use Furniture Company*  to conceal

overcharges to ASC and Health & Hospital for interior design and furniture services for the

purpose of enriching themselves.   Furniture Company provided office space design, ordering,

and installation services for businesses.

32.      Between January and May 2015, GANOTE requested that the Furniture Company

CEO inflate invoices to ASC by 20–25% and then kick the 20–25% overcharge back to

GANOTE's shell company.

33.      On or around June 4, 2015, GANOTE and the Furniture Company CEO had a

phone conversation.   The Furniture Company CEO expressed concern about paying the

overcharge to the shell company.   In response, GANOTE said, "just between you and me . . .

He's [JAMES BURKHART's] a part of that LLC.   That's all you need to know."   Ultimately,

the Furniture Company CEO declined to inflate invoices, and Furniture Company did not do

business with ASC.

### *Nurse Call Lights, Life Safety Equipment Maintenance, and Generators*

34.      Between approximately December 2013 and September 15, 2015, JAMES

BURKHART, BENSON, and GANOTE concealed overcharges to ASC and Health & Hospital

---

* The generic term "Furniture Company" refers to a company that provided interior design services and furniture
for businesses.   Throughout the Indictment, other generic terms are used to refer to companies that provided other
products and services.   These terms include "Nurse Call Light Company 1," "Nurse Call Light Company 2,"
"Patient Lift Company," "Medical Supply Company 1," "Medical Supply Company 2," "Food Company," "Office
Supply Company," "Industrial Supply Company," "Pharmacy Company 1," "Pharmacy Company 2," "Home Health
Company," and "Hospice Company."

for nurse call monitoring systems, maintenance services, and generators for the purpose of enriching themselves.

35.     In or around November 2013, JAMES BURKHART and GANOTE approached Nurse Call Light Company 1 to install upgraded nurse call monitoring systems throughout all ASC-managed facilities.  JAMES BURKHART and GANOTE requested that Nurse Call Light Company 1 inflate its invoices by 30% and pay the 30% overcharge to Force Holding Company LLC, GANOTE's shell company.  Nurse Call Light Company 1 declined to inflate invoices and pay the shell company.  As a result, JAMES BURKHART immediately terminated negotiations with Nurse Call Light Company 1.

36.     Shortly thereafter, JAMES BURKHART and GANOTE approached Nurse Call Light Company 2 with the same proposal.  Nurse Call Light Company 2 agreed and inflated its invoices to ASC by 35%.  ASC paid Nurse Call Light Company 2's inflated invoices, using Health & Hospital funds.  Nurse Call Light Company 2 kicked the 35% overcharge back to Force Holding Company LLC, which GANOTE split among JAMES BURKHART, BENSON, and himself.

37.     JAMES BURKHART, BENSON, and GANOTE subsequently contracted with Nurse Call Light Company 2 to provide other products and services at ASC-managed facilities, including maintenance of fire safety alarms and equipment and installation of electrical generators.  Again, Nurse Call Light Company 2 inflated its invoices to ASC and paid the 35% overcharge to GANOTE's shell company, which GANOTE split among JAMES BURKHART, BENSON, and himself.

38.     As a result of this scheme, JAMES BURKHART, BENSON, and GANOTE received a total of over $3.7 million.

***Patient Lifts***

39.     Between approximately September 2014 and September 15, 2015, JAMES

BURKHART, BENSON, and GANOTE used Healthcare by Design, an assumed business name

of Finite Capital, LLC, a shell company they owned, to conceal overcharges to ASC and Health

& Hospital for patient lifts for the purpose of enriching themselves.

40.     In or around September 2014, an ASC employee contacted Patient Lift Company

about replacing patient lifts at all ASC-managed facilities.   The employee informed BENSON,

the employee's supervisor, of the products and services Patient Lift Company could provide.

BENSON directed the employee to contact GANOTE and involve GANOTE in the acquisition

of patient lifts from Patient Lift Company.   GANOTE directed Patient Lift Company to send all

quotes and invoices for the patient lifts to Healthcare by Design, rather than to ASC.   BENSON

and GANOTE concealed the fact that both BENSON and JAMES BURKHART owned portions

of Healthcare by Design.

41.     GANOTE inflated Patient Lift Company's quotes and invoices before sending

them to ASC on Healthcare by Design letterhead.   As a result of one inflated invoice, ASC,

using Health & Hospital funds, paid $1,298,049.62 to Healthcare by Design.   GANOTE, in

turn, paid Patient Lift Company the original invoice amount of $909,053.08 for the initial

installment of patient lifts.

42.     As a result of this scheme, JAMES BURKHART, BENSON, and GANOTE

received through their shell company a total of over $375,000.

***Wound Care Products and Miscellaneous Medical Supplies***

43.     In approximately January and February 2011, ASC employees complained to

BENSON about the quality of products provided by Medical Supply Company 1, a company that

12

manufactured and distributed wound care creams, cleansers, glucometers, and other medical products.   These complaints led JAMES BURKHART and BENSON to claim to have cut off business with the company.

44.   Notwithstanding the complaints, between approximately July 2, 2013 and September 15, 2015, JAMES BURKHART, BENSON, and GANOTE created and used a shell company, Cardinal Distribution LLC, to supply to ASC the same products from Medical Supply Company 1.

45.   At GANOTE's direction, Medical Supply Company 1's employees prepared invoices on Cardinal Distribution LLC letterhead, inflated prices by 40%, and submitted the inflated invoices to ASC.   ASC paid the inflated invoices using Health & Hospital funds. GANOTE kicked a quarter of the overcharge back to Medical Supply Company 1 and transferred the remaining three quarters of the overcharge to his shell company, Force Holding Company LLC, which he then distributed to JAMES BURKHART, BENSON, and himself.

46.   As a result of this scheme, JAMES BURKHART, BENSON, and GANOTE received a total of over $520,000.

### Other Medical Supplies

47.   Between approximately March 16, 2015 and September 15, 2015, JAMES BURKHART and GANOTE created and used Med-Healthline Supply, LLC, a shell company they owned together with other individuals, to steal discounts they had negotiated on behalf of ASC for medical supplies from Medical Supply Company 2, for the purpose of enriching themselves.

48.   JAMES BURKHART and GANOTE negotiated an 11% discount on numerous medical supplies purchased from Medical Supply Company 2 for ASC-managed facilities.

49.     At GANOTE's direction, Medical Supply Company 2 sent invoices to ASC for the full, non-discounted price of the products.   At JAMES BURKHART's direction, ASC, using Health & Hospital funds, paid the full, non-discounted price to Med-Healthline Supply LLC.   GANOTE then wrote checks from Med-Healthline Supply LLC to Medical Supply Company 2 for the discounted price of the products.   GANOTE and JAMES BURKHART, along with the other owners of the shell company, kept ASC's 11% discount.

50.     As a result of this scheme, JAMES BURKHART, BENSON, and GANOTE received through their shell company a total of approximately $285,000.

### Speech Therapists

51.     Before November 2012, ASC employed speech therapists to provide speech therapy to patients.   In or around November 2012, JAMES BURKHART and BENSON directed that the employment of ASC's speech therapists be transferred to a separate company owned by GANOTE called "Best Choice Therapy Services."   The speech therapists continued to work in ASC facilities in the same capacity as before, but were paid by Best Choice, which in turn was paid by Health & Hospital.

52.     In or around February 2014, JAMES BURKHART directed that the speech therapists be transferred back into the employ of ASC.   JAMES BURKHART and GANOTE used GANOTE's shell company, BTS Solutions LLC, to send invoices to ASC for purported "consulting" associated with transferring the speech therapists back to ASC.   In reality, neither GANOTE nor his shell company provided any such service.   Nevertheless, ASC paid these fraudulent invoices using Health & Hospital funds, to GANOTE's shell company.   In turn, GANOTE paid a portion of these funds to JAMES BURKHART.

53.    As a result of this scheme, JAMES BURKHART and GANOTE received approximately $500,000 in sham "consulting" fees.

All of which is in violation of Title 18, United States Code, Section 1349.

## COUNTS 2–11
## Mail and Wire Fraud
## 18 U.S.C. §§ 1341 and 1343

54.     Paragraphs 1 through 53 of this Indictment are incorporated by reference as though set forth fully herein.

55.     Beginning in or before January 2009 and continuing through September 15, 2015, in the Southern District of Indiana and elsewhere,

**JAMES BURKHART,**
**DANIEL BENSON,**
**STEVEN GANOTE, and**
**JOSHUA BURKHART**
**a/k/a "Justin Barnes,"**

the Defendants herein, together with others known and unknown to the Grand Jury, did knowingly and with intent to defraud, devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that such pretenses, representations, and promises were false and fraudulent when made.

56.     On or around the dates specified as to each count below, the Defendants specified below, for the purpose of executing the aforesaid scheme and artifice to defraud, and attempting to do so, did knowingly cause to be delivered any matter or thing by mail or commercial interstate carrier, according to the directions thereon ("Mail Fraud"), or knowingly transmit and cause to be transmitted certain wire communications in interstate and foreign commerce ("Wire Fraud"), as more particularly described below:

| Count | Defendant | Approximate Date | Wire/Mail Transmission | Description |
|---|---|---|---|---|
| 2 | JAMES BURKHART<br><br>JOSHUA BURKHART | June 21, 2013 | <u>Mail:</u>   Mailing from ASC to Mainscape via U.S. Postal Service | <u>Mainscape/Circle Consulting:</u> Check for $122,880.88 from ASC to Mainscape |
| 3 | JAMES BURKHART | August 21, 2015 | <u>Wire:</u>   Telephone call between JAMES BURKHART in Florida and Mainscape owner in Indiana | <u>Mainscape:</u> Discussing creating shell company to further the Mainscape scheme |
| 4 | JAMES BURKHART<br><br>JOSHUA BURKHART | March 19, 2014 | <u>Wire:</u>   Email from justin.barnes@ heartlandflag.com, with server outside of Indiana, to ASC employees, with server in Indiana | <u>Heartland Flag:</u> "Justin Barnes" discussing flag orders with ASC employees |
| 5 | JAMES BURKHART<br><br>GANOTE | June 11, 2014 | <u>Wire:</u>   Email from jimburkhart@ americansrcommunities.com, with server in Indiana, to sjganote@ yahoo.com, with server outside Indiana | <u>Indiana Uniform Company:</u> Discussing invoice and profitability of discharge packages purportedly supplied by Indiana Uniform Company LLC |
| 6 | JAMES BURKHART<br><br>GANOTE | May 31, 2015 | <u>Wire:</u>   Email from sjganote@yahoo.com, with server outside Indiana, to jimburkhart@ americansrcommunities.com, with server in Indiana | <u>Furniture:</u> Discussing draft contract for "commission" from Furniture Company to GANOTE |
| 7 | JAMES BURKHART<br><br>GANOTE | February 5, 2015 | <u>Wire:</u>   Email from sjganote@yahoo.com, with server outside Indiana, to CEO of Nurse Call Light Company 2, with server in Indiana | <u>Nurse Call Light Company 2:</u> Thanking CEO for inflating invoices |
| 8 | GANOTE | February 3, 2015 | <u>Wire:</u>   Email from Patient Lift Company, with server outside of the United States, to sjganote@yahoo.com, with server outside Indiana | <u>Patient lifts:</u> Sending consolidated invoice in the amount of $904,129.46 from Patient Lift Company to GANOTE |

| Count | Defendant | Approximate Date | Wire/Mail Transmission | Description |
|-------|-----------|------------------|------------------------|-------------|
| 9 | JAMES BURKHART<br><br>BENSON<br><br>GANOTE | August 27, 2013 | <u>Wire:</u>   Email from jimburkhart@americansrcommunities.com, with server in Indiana, to sjganote@yahoo.com, with server outside Indiana | <u>Wound Care Supplies</u>: BENSON and JAMES BURKHART forwarding ASC employee complaint about regarding inflated price of medical supplies from Medical Supply Company 1 |
| 10 | JAMES BURKHART<br><br>GANOTE | June 15, 2015 | <u>Mail:</u>   Mailing from Med-Healthline Supply, LLC to Medical Supply Company 2 via U.S. Postal Service | <u>Other Medical Supplies</u>: Check for $151,004.42 from Med-Healthline Supply LLC to Medical Supply Company 2 |
| 11 | JAMES BURKHART<br><br>GANOTE | June 11, 2014 | <u>Wire:</u>   Email from jimburkhart@americansrcommunities.com, with server in Indiana, to sjganote@yahoo.com, with server outside Indiana | <u>Speech Therapists</u>: JAMES BURKHART sending GANOTE draft BTS Solutions contract for purported consulting |

Counts 2 and 10 are each a violation of Title 18, United States Code, Section 1341 (Mail Fraud).

Counts 3–9 and 11 are each a violation of Title 18, United States Code, Section 1343 (Wire Fraud).

## COUNT 12
## 18 U.S.C. § 1343
## Wire Fraud

57.     Paragraphs 1 through 12 are incorporated by reference as though set forth fully

herein.

58.     Beginning on or before March 17, 2011 and continuing until approximately

September 15, 2015, within the Southern District of Indiana and elsewhere,

### DANIEL BENSON,

Defendant herein, did knowingly and with intent to defraud, devise a scheme and artifice to

defraud, and to obtain money and property by means of materially false and fraudulent pretenses,

representations, and promises, knowing that such pretenses, representations, and promises were

false and fraudulent when made.

### *Office Supplies and Miscellaneous Industrial Supplies*

59.     BENSON concealed the fact that he stole rebate payments he had negotiated on

behalf of ASC for office supplies and other products purchased from Office Supply Company

and Industrial Supply Company.   Office Supply Company provided ASC facilities with various

office supplies.   Industrial Supply Company provided ASC facilities with a variety of products,

including beds, wheelchairs, plumbing, electrical products, and other nursing home products.

60.     BENSON negotiated the prices for supplies from both Office Supply Company

and Industrial Supply Company.   As part of the negotiation, BENSON negotiated a discount on

the prices of supplies, as well as a rebate of 2% to 3% based on the amount of supplies ASC

purchased from the two companies.   But BENSON stole ASC's rebate by instructing the

negotiating employee, who worked at both companies, to make the rebate payments to the Dan

Benson Family Charitable Trust, a charitable fund created by BENSON.   BENSON concealed

his theft of ASC's rebate from ASC and Health & Hospital by repeatedly instructing the employee to keep the payments a secret.

61.     On or around July 1, 2015, BENSON sent an interstate wire communication in furtherance of the scheme, to wit, BENSON sent an email from his ASC email account, Dan@americansrcommunities.com, with an email server in Indiana, to the employee's email account at Industrial Supply Company, with an email server outside of Indiana, and stated, "I don't want anything in writing about the 3%."

62.     As a result of the scheme, the Dan Benson Family Charitable Trust received approximately $227,000 in fraudulent payments.

All of which is in violation of Title 18, United States Code, Section 1343.

## COUNT 13
### Conspiracy to Violate Anti-Kickback Statute
### 18 U.S.C. § 371 and 42 U.S.C. § 1320a-7b(b)

63.     Paragraphs 1 through 53 are incorporated by reference as though set forth fully

herein.

64.     Beginning in or around August 2013 and continuing through September 15, 2015,

in the Southern District of Indiana and elsewhere,

### JAMES BURKHART,
### DANIEL BENSON, and
### STEVEN GANOTE,

Defendants herein, with others known and unknown to the grand jury, did conspire to knowingly

and willfully solicit and receive any remuneration, including kickbacks and bribes, directly and

indirectly, overtly and covertly, in return for their referral of patients for the furnishing and

arranging for the furnishing of services, or for their purchase of goods and services, for which

payment may be made in whole or in part under a Federal health care program, namely,

Medicare and Indiana Medicaid.

### <u>Purpose of the Conspiracy</u>

65.     It was the purpose of the conspiracy for ASC executives JAMES BURKHART

and BENSON, together with GANOTE and others, to unlawfully enrich themselves by (a)

soliciting and receiving kickbacks in return for referring patients for the furnishing and

purchasing of pharmacy services, food, home health services, and hospice services; and (b)

concealing the offer, solicitation, payment, and receipt of kickbacks.

**Manner and Means**

66.     It was part of the conspiracy that JAMES BURKHART, BENSON, GANOTE,

and others used shell companies and sham contracts to conceal these kickbacks from ASC,

Health & Hospital, and federal health care programs.

67.     *Pharmacy.*   In or around September 2013 through September 15, 2015, JAMES

BURKHART and GANOTE solicited and received through shell companies Detour Marketing

& Consulting Services LLC, Guardian Management Solutions LLC, and Force Holding

Company LLC, approximately $5.5 million in kickbacks disguised as "marketing" fees from

Pharmacy Companies 1 and 2, which were owned by the same person, in return for JAMES

BURKHART and BENSON contracting with Pharmacy Company 1 to provide pharmacy

services throughout ASC-managed facilities.

68.     *Food.*   Between approximately October 30, 2013 and September 15, 2015,

JAMES BURKHART, BENSON, and GANOTE solicited and received through shell company

Force Holding Company LLC over $825,000 in kickbacks disguised as payments to a purported

"group purchasing organization" from Food Company, in return for JAMES BURKHART and

BENSON causing ASC-managed facilities to purchase food and other products from Food

Company.

69.     *Home Health.*   Between approximately April 1, 2014 and December 2015,

JAMES BURKHART, BENSON, and GANOTE, solicited and received through their shell

companies a total of approximately $325,000 in kickbacks disguised as "consulting" fees and

ownership shares from Home Health Company, in return for JAMES BURKHART and

BENSON designating Home Health Company as an ASC "preferred provider," and causing the

referral of patients from ASC to Home Health Company.

70.   *Hospice.*   Between approximately August 10, 2013 and at least January 1, 2015, JAMES BURKHART, BENSON, and GANOTE solicited and received through shell companies SRB, Inc. and Force Holding Company LLC a total of approximately $140,000 in kickbacks disguised as "consulting" fees from Hospice Company, in return for JAMES BURKHART and BENSON designating Hospice Company as an ASC "preferred provider," and causing the referral of patients from ASC to Hospice Company.

## Overt Acts

### *Pharmacy*

71.   On or around October 1, 2013, GANOTE, on behalf of Detour Marketing & Consulting Services LLC, executed a purported "pharmacy marketing agreement" with Pharmacy Company 1.

72.   Beginning on or around October 23, 2013, Pharmacy Company 1 paid Detour Marketing & Consulting Services LLC approximately $170,000 per month.   Pharmacy Company 1 provided pharmacy services for patients in ASC-managed facilities, and billed Health & Hospital as well as Medicare and Indiana Medicaid for these services.

73.   Beginning on or around January 8, 2014, GANOTE caused Detour Marketing & Consulting Services LLC to pay to JAMES BURKHART's shell company, MMAJ LLC, $205,000.00 per quarter.

### *Food*

74.   On or around October 30, 2013, JAMES BURKHART and GANOTE negotiated and executed an agreement with Food Company to provide food and food services to ASC facilities.

75.     On or around March 7, 2014, ASC paid $4,332.31 to Food Company using Health & Hospital funds, which were supplied by Medicare and Indiana Medicaid, for one ASC-managed facility's weekly food orders.

76.     On or around March 26, 2014, Food Company paid approximately $121,685.23 to Force Holding Company LLC.

77.     On or around April 17, 2014, GANOTE caused Force Holding Company LLC to pay $87,475.50 of the funds from Food Company to Truly LLC, JAMES BURKHART's shell company.

### *Home Health*

78.     On or around April 1, 2014, JAMES BURKHART, BENSON, and GANOTE entered into a purported "Contribution and Subscription Agreement" and a purported "Consulting Agreement" with the owner of Home Health Company.

79.     On or around December 23, 2014, JAMES BURKHART and BENSON caused patient J.H. to be referred to Home Health Company for home health services, which were billed to Medicare.

80.     In January 2015, JAMES BURKHART, BENSON, and GANOTE each received checks for $54,500 from the owner of Home Health Company.

### *Hospice*

81.     On or around August 10, 2013, GANOTE entered into a purported purchase option agreement with Hospice Company 1 in which he was given an "option" to purchase Hospice Company.

24

82. On or around March 31, 2014, JAMES BURKHART and BENSON caused patient V.S. to be referred to Hospice Company for hospice services, which were billed to Indiana Medicaid.

83. Between approximately August 23, 2013 and June 3, 2014, GANOTE received approximately $35,250 from the owner of Hospice Company, which was purported to be for "hospice consulting" and in or around June 2014, distributed $17,404 to JAMES BURKHART and $10,000 to BENSON.

All of which is in violation of Title 18, United States Code, Section 371.

## COUNTS 14–22
## Money Laundering
## 18 U.S.C. § 1956(a)(1)(B)(i)

84. Paragraphs 1 through 83 are incorporated by reference as though set forth fully herein.

85. On the dates specified below, within the Southern District of Indiana and elsewhere,

**JAMES BURKHART,**
**DANIEL BENSON,**
**STEVEN GANOTE, and**
**JOSHUA BURKHART,**
**a/k/a "Justin Barnes,"**

the Defendants herein, did knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce, as described in each of the enumerated Counts below, which involved the proceeds of a specified unlawful activity – that is, Mail Fraud, in violation of Title 18, United States Code, Section 1341; Wire Fraud, in violation of Title 18, United States Code, Section 1343; Health Care Fraud, in violation of Title 18, United States Code, Section 1347; and Conspiracy to Violate the Anti-Kickback Statute, in violation of Title 18, United States Code, Section 371 – knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity.

| Count | Defendant | Approximate Date | Transaction |
|-------|-----------|------------------|-------------|
| 14 | JOSHUA BURKHART | February 21, 2012 | $5,429.19 payment from Mainscape Inc.'s account at Fifth Third Bank to **Circle Consulting LLC**'s account at Regions Bank |
| 15 | JAMES BURKHART | March 3, 2015 | $130,000.00 payment from Mainscape Inc.'s account at Regions Bank to **Driver Sandwedge LLC**'s account at Fifth Third Bank |
| 16 | BENSON GANOTE | December 4, 2014 | $175,000.00 payment from **Indiana Uniform Company LLC**'s account at JP Morgan Chase bank to **There Is A Hope LLC**'s account at Huntington Bank |
| 17 | JAMES BURKHART BENSON GANOTE | December 16, 2014 | $770,771.04 payment from Nurse Call Light Company 2's account at German American bank to **Force Holding Company LLC**'s account at JP Morgan Chase Bank |
| 18 | JAMES BURKHART GANOTE | October 3, 2013 | $11,324.02 payment from **Cardinal Distribution LLC** at JP Morgan Chase bank to **Force Holding Company LLC**'s account at JP Morgan Chase Bank |
| 19 | JAMES BURKHART GANOTE | July 2, 2014 | $60,000.00 payment from **BTS Solutions LLC**'s account at JP Morgan Chase bank to **MMAJ LLC**'s account at Fifth Third Bank |
| 20 | JAMES BURKHART GANOTE | December 15, 2014 | $205,000.00 payment from **Detour Marketing and Consulting Services LLC**'s account at JP Morgan Chase bank to **MMAJ LLC**'s account at Fifth Third Bank |
| 21 | JAMES BURKHART GANOTE | October 6, 2014 | $97,874.70 payment from **Force Holding Company LLC**'s account at JP Morgan Chase Bank to **Truly LLC's** account at Fifth Third Bank |

| Count | Defendant | Approximate Date | Transaction |
|-------|-----------|------------------|-------------|
| 22 | BENSON GANOTE | June 12, 2014 | $10,000 payment from **Force Holding Company LLC**'s account at JP Morgan Chase Bank to **There Is A Hope LLC**'s account at Huntington Bank |

Each of which is in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

## COUNTS 23–32
## Money Laundering
## 18 U.S.C. § 1957

86.     Paragraphs 1 through 85 are incorporated by reference as though set forth fully herein.

87.     On the dates specified below, within the Southern District of Indiana and elsewhere,

**JAMES BURKHART,**
**DANIEL BENSON, and**
**STEVEN GANOTE,**

the Defendants herein, did knowingly engage and attempt to engage in a monetary transaction by, through, or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, as described in each of the enumerated Counts below, such property having been derived from a specified unlawful activity, that is, Mail Fraud, in violation of Title 18, United States Code, Section 1341; Wire Fraud, in violation of Title 18, United States Code, Section 1343; Health Care Fraud, in violation of Title 18, United States Code, Section 1347; and Conspiracy to Violate the Anti-Kickback Statute, in violation of Title 18, United States Code, Section 371.

| Count | Defendant | Approximate Date | Transaction |
|-------|-----------|------------------|-------------|
| 23 | BENSON | October 18, 2013 | $105,000.00 payment from **There Is A Hope LLC's** account at Huntington Bank to BENSON's personal account at Huntington Bank to fund loan payments for a vacation home on Lake Michigan |
| 24 | BENSON | October 18, 2013 | $65,000 payment from BENSON's personal account at Huntington Bank to BENSON's home mortgage at Huntington Bank for a vacation home on Lake Michigan |
| 25 | BENSON | October 18, 2013 | $40,029.28 payment from BENSON's personal account at Huntington Bank to BENSON's line of credit at Huntington Bank for a vacation home on Lake Michigan |
| 26 | GANOTE | October 3, 2014 | $20,000.00 cashier's check from **Detour Marketing & Consulting Services LLC** issued by JP Morgan Chase made out to Caesars for the purchase of casino chips at Caesars Palace in Las Vegas, Nevada |
| 27 | GANOTE | October 13, 2014 | $30,000.00 cashier's check from **Detour Marketing & Consulting Services LLC** issued by JP Morgan Chase made out to Master Jewelers for the purchase of gold |
| 28 | GANOTE | November 12, 2014 | $30,000 payment from **BTS Solutions, LLC's** account at JP Morgan Chase to Growing City Corp. for construction on a vacation home in Marco Island, Florida |
| 29 | JAMES BURKHART | December 5, 2014 | $133,000.00 payment from **MMAJ LLC** to R.W. for the purchase of gold |

| Count | Defendant | Approximate Date | Transaction |
|---|---|---|---|
| **30** | GANOTE | December 15, 2014 | $102,500.00 cashier's check from **Force Holding Company LLC's** account at JP Morgan Chase made out to Reis Nichols Jewelers for the purchase of a Rolex watch, Roberto Coin bracelet, and other diamond jewelry |
| **31** | JAMES BURKHART | July 25, 2014 | $27,927.00 payment from **Truly LLC** to Moyer & Co. Fine Jewelers for diamond earrings and other diamond jewelry |
| **32** | JAMES BURKHART | July 30, 2015 | $1,432,247.62 wire transfer from **Truly LLC's** account at Fifth Third Bank for the purchase of real estate at 6077 East Island Avenue, Syracuse, Indiana, adjacent to JAMES BURKHART's vacation home on Lake Wawasee |

Each of which is in violation of Title 18, United States Code, Section 1957.

## FORFEITURE

88.     The allegations contained in Counts 1 through 32 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 982(a)(7) and (b)(1), 981(a)(1)(A) and (C), 1956(c)(7)(A) and (F), and 1961(1)(B) and pursuant to Title 28, United States Code, Section 2461(c), as part of any sentence imposed.

89.     Pursuant to Title 18, United States Code, Section 982(a)(7), if convicted of the offenses set forth in Counts 1 through 32 of this Indictment,

**JAMES BURKHART,
DANIEL BENSON,
STEVEN GANOTE, and
JOSHUA BURKHART,
a/k/a "Justin Barnes,"**

the Defendants herein, shall forfeit to the United States of America:

a.      any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the offenses; or

b.      a sum of money equal to the total amount of the proceeds of the offenses.

90.     The property subject to forfeiture includes, but is not necessarily limited to:

### Bank Accounts

| Bank Accounts | |
|---|---|
| 1 | All sums of U.S. Currency in Fifth Third Bank Account Number 7655967037 in the name of Driver Sandwedge, LLC (Asset ID #15-FBI-006249) |
| 2 | All sums of U.S. Currency in Fifth Third Bank Account Number 7650004604 in the name of MMAJ, LLC (Asset ID #15-FBI-006251) |
| 3 | All sums of U.S. Currency in Fifth Third Bank Account Number 7655829567 in the name of Truly, LLC |
| 4 | All sums of U.S. Currency in Huntington National Bank Account Number 1551801171 in the name of There Is A Hope, LLC |

| Bank Accounts | |
|---|---|
| 5 | All sums of U.S. Currency in JP Morgan Chase Bank Account Number 602665338 in the name of BTS Solutions, LLC |
| 6 | All sums of U.S. Currency in JP Morgan Chase Bank Account Number 592399955 in the name of BTS Ventures, LLC dba Best Choice |
| 7 | All sums of U.S. Currency in JP Morgan Chase Bank Account Number 251800195 in the name of Cardinal Distribution, LLC |
| 8 | All sums of U.S. Currency in JP Morgan Chase Bank Account Number 509317306 in the name of Detour Marketing & Consulting Service, LLC |
| 9 | All sums of U.S. Currency in JP Morgan Chase Bank Account Number 639707053 in the name of Finite Capital, LLC |
| 10 | All sums of U.S. Currency in JP Morgan Chase Bank Account Number 252620850 in the name of Force Holding Company, LLC |
| 11 | All sums of U.S. Currency in JP Morgan Chase Bank Account Number 982353161 in the name of Guardian Management Solutions, LLC |
| 12 | All sums of U.S. Currency in JP Morgan Chase Bank Account Number 255101672 in the name of Indiana Uniform Company, LLC |
| 13 | All sums of U.S. Currency in JP Morgan Chase Bank Account Number 257789017 in the name of SRB, Inc. |
| 14 | All sums of U.S Currency in North Salem State Bank Account Number 234823 in the name of Med-Healthline Supply, LLC |
| 15 | All sums of U.S Currency in North Salem State Bank Account Number 1200005480 in the name of Med-Healthline Supply, LLC Escrow (CD) |
| 16 | All sums of U.S. Currency in PNC Bank Account Number 4631456854 in the name of Bright HVAC, LLC |
| 17 | All sums of U.S. Currency in PNC Bank Account Number 4631456782 in the name of Detour Marketing & Consulting Service, LLC |
| 18 | All sums of U.S. Currency in PNC Bank Account Number 4631456774 in the name of Force Holding Company, LLC |
| 19 | All sums of U.S. Currency in Regions Bank Account Number 96567198 in the name of Circle Consulting, LLC (Asset ID #15-FBI-006258) |
| 20 | All sums of U.S. Currency in Regions Bank Account Number 87501333 in the name of Heartland Flag, LLC |
| 21 | All sums of U.S. Currency in Regions Bank Account Number 216640810 in the name of MAZ, LLC |
| 22 | U.S. Currency up to the amount of $634,905 in Huntington National Bank Account Number 3559255167 in the name of Daniel Benson |
| 23 | U.S. Currency up to the amount of $634,905 in *Huntington* National Bank Brokerage Account Number 081516 in the name of Daniel Benson |
| 24 | U.S. Currency up to $83,666 in New York Life Insurance Brokerage Account Number N29074853 in the name of Daniel Benson |

| | **Bank Accounts** |
|---|---|
| 25 | U.S. Currency up to $387,000 in Regions Bank Account Number 0020890699 in the name of Joshua Burkhart (Asset ID #15-FBI-006252) |
| 26 | U.S. Currency up to $545,365 in Wells Fargo Account Number 13132308 in the name of James Burkhart |

### Real and Other Property

| | **James Burkhart** |
|---|---|
| 27 | Real Property Commonly Known As East Island Avenue, Syracuse, Kosciusko County, IN 46567 (Parcel Number 43-04-09-300-350.000-025) |
| 28 | Real Property Commonly Known As 6077 East Island Avenue, Syracuse, Kosciusko County, IN 46567 (Parcel Number 43-04-09-300-357.000-025) |
| 29 | Real Property Commonly Known As 9815 Mayflower Park, Unit 1200, Carmel, Hamilton County, IN 46032 (Parcel Number 29-13-07-026-012.000-018) |
| 30 | 83 each Gold 1 oz Krugerrand Coins, Part Number B10020 |
| 31 | One (1) each Kilogram Gold Bar, Part Number B10267 |
| 32 | One (1) pair 18K Rose Gold 13.14 CTW Brown Diamond Hoop Earrings, Jeweler Stock #153038 |
| 33 | One (1) each Platinum 32.61CTW Diamond Necklace, Jeweler Stock #391890 |

| | **Steven Ganote** |
|---|---|
| 34 | Real Property Commonly Known As 6446 W County Road 900 N, North Salem, Hendricks County, IN 46165 (Parcel Number 32-04-21-400-008.000-007) |
| 35 | Real Property Commonly Known As 850 South Collier Boulevard, Unit 501, Marco Island, Collier County, FL 34145 (Parcel Number 72530680009) |
| 36 | Real Property Commonly Known As 651 West Elkcam Circle, Unit 821, Marco Island, Collier County, FL 34145 (Parcel Number 73631201140) |
| 37 | Two (2) each 10 oz .999 Gold Bars with Eagles |
| 38 | One (1) each Roberto Coin Double Wrap Diamond Bracelet 18K White Gold w/ 98 round brilliant cut diamonds (Jeweler ID #BRD6X50123) |
| 39 | One (1) pair Diamond Pave Framed Stud Earrings 14K White Gold w/ two (2) round brilliant cut diamonds 2.04 CTW and 30 round brilliant cut diamonds 0.23 CTW (Jeweler ID #SFNCY00095) |
| 40 | One (1) each 18K Rose Gold Panerai Radiomir 45 mm Wristwatch S/N OP6890BB1544948 (Jeweler ID #PANER00317) |
| 41 | One (1) each Rolex 01505 18K White Gold Sky-Dweller 42 mm Wristwatch S/N H191D993 |
| 42 | One (1) each Rolex 01345 Platinum Day-Date II 41 mm Wristwatch S/N Y0405937 |

33

| | Joshua Burkhart |
|---|---|
| 43 | Real Property Commonly Known As 10124 Cheswick Lane, Fishers, IN 46037 (Parcel Number 29-15-08-034-003.000-020 |

91.    If any of the property described above, as a result of any act or omission of the

Defendants:

        a.      cannot be located upon the exercise of due diligence;

        b.      has been transferred or sold to, or deposited with, a third party;

        c.      has been placed beyond the jurisdiction of the court;

        d.      has been substantially diminished in value; or

        e.      has been commingled with other property which cannot be divided

              without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title

21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section

2461(c).

92.    In addition, the United States may seek civil forfeiture of the property described above in paragraph 90 pursuant to Title 18, United States Code, Sections 981(a)(1)(A) and (C), incorporating Title 18, United States Code, Section 1956(c)(7)(F), and pursuant to Title 28, United States Code, Section 2461(c).

A TRUE BILL:



FOREPERSON

JOSH J. MINKLER
United States Attorney

By:    Nicholas J. Linder
Assistant United States Attorney

By:    Cindy J. Cho
Assistant United States Attorney